**UNITED STATES DISTRICT COURT**
**SOUTHERN  DISTRICT OF NEW YORK**

| | |
|---|---|
| Mireya Aguilo Individually and on Behalf of All Others Similarly Situated<br><br>           Plaintiff,<br><br>    -against-<br><br>Vails Gate Cleaners Inc. and Exit 9 LLC Richard Massimi<br><br>                Defendants. | Case No. 7:18-cv-08850-PMH-JCM |

---

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR CONDITIONAL CERTIFICATION UNDER 29 U.S.C 216(B)

---

Anthony R. Portesy (AP-3804)
Varacalli & Hamra, LLP
*Attorneys for Plaintiffs*
32 Broadway, Suite 1818
New York, New York 10018
Tel: (646) 590-0571
Fax: (646) 619-4012

E-mail: aportesy@vhllp.com

# TABLE OF CONTENTS

**PRELIMINARY STATEMENT**……………………………………………………1

**BACKGROUND**……………………………………………………………………...2- 5

    A. **PLAINTIFF'S EMPLOYMENT HISTORY**…………………………..2, 3

    B. **EXIT 9 LLC AND VAILS GATE CLEANERS TIME KEEPING SYSTEMS**……………………………………………………………..3

    C. **PROCEDURAL HISTORY**……………………………………………3-5

**ARGUMENT**……………………………………………………...……..5-15

**POINT I CONDITIONAL CERTIFICATION SHOULD BE DENIED BECAUSE PLAINTIFFS ARE NOT SIMILARLY SITUATED TO THE PUTATIVE COLLECTIVE ACTION MEMBERS**……………………………………………….. 5, 6

**B. PLAINTIFF HAS FAILED TO SATISFY THE STANDARD FOR COLLECTIVE CERTIFICATION**……………………………………………………….6-8

**POINT II THE PROPOSED COLLECTIVE AND NOTICE TO COLLECTIVE SHOULD BE MODIFIED IN THE EVENT THE COURT GRANTS CONDITIONAL CERTIFICATION**………………………………………………………….8-14

A. THE PROPOSED COLLECTIVE CLASS IS OVERLY BROAD……….….….8, 9
B. THE COLLECTIVE SHOULD BE LIMITED TO EMPLOYEES EMPLOYED WITHIN THREE YEARS FROM SEPT 27, 2018…………………...…………9, 10
C. MODIFICATIONS TO THE NOTICE………………………………………..10-14
   a. ELIMINATION OF THE "FROM PARAGRAPH" AND THE "QUESTIONS" PARAGRAPH FOOTER…………………………………10
   b. NOTICE SHOULD ALERT RECIPIENTS TO THEIR OWN POTENTIAL INVOLVEMENT INCLUDING PARTICIPATION IN DISCOVERY……………………………………………………… ….……11
   c. POSTING OF NOTICE SHOULD NOT REQUIRE POSTING AT RETAIL LOCATIONS…………………………………………...11, 12
   d. JOINING LAWSUIT DOES NOT REQUIRE THE OPT INS TO AGREE TO PLAINTIFF'S COUNSEL'S REPRESENTATION…………..……….12
   e. MODIFICATION TO SECTION "COUNSEL FOR DEFENDANTS…..12
   f. NO RETALIATION LANGUAGE SHOULD BE REMOVED……...…..12
   g. IMMIGRATION STATUS LANGUAGE IS UNNECESSARY…………...13
   h. OPT IN NOTICE TIMING SHOULD BE LIMITED TO FORTY FIVE DAYS……………………………………………………… ………...13
   i. CONSENT TO SUE FORM SHOULD BE MODIFIED TO CONTAIN ONLY PLAINTIFF'S NAME, ADDRESS, AND SIGNATURE……….14

POINT III PLAINTIFF'S REQUEST FOR CELLPOHONE CONTACT NUMBER AND A REMINDER NOTICE FOR A COLLECTIVE IS UNNECESSARY AND BURDENSOME……………………………………………………… …..14-16

A. **REMINDER NOTICE IS UNNECESSARY**……………………………………….14

B. **CELLPHONE NUMBERS ARE INHERENTLY PERSONAL AND DEFENDANTS SHOULD NOT BE REQUIRED TO PROCURE THIS INFORMATION TO PLAINTIFFS**……………………………………………….15

**CONCLUSION**……………………………………………………………………………16,17

# TABLE OF AUTHORITIES

**Cases**

*Bittencourt v. Ferrara Bakery & Café Inc.*

  …………………………………………………………………*13*

*Cabrera v.
Stephens*……………………………………………………………………………

……*13*

*Delaney v. Geisha
NYC*…………………………………………………………….……*16*

*Fasanelli v. Heartland Brewerly
Inc*…………………………………………………………………*9*

*Fengler v. Crouse Health
Found*…………………………………………………………..*5, 16*

*Flores v. Osaka Health Spa Inc..*

  ……………………………………………………………………*8*

*Francis v. A & E Stores
Inc*……………………………………………………….…………*10*

*Garcia v. Chipotle Mexican
Grill*…………………………………………………...………………..*10*

*Gordon v. Kaleida
Health*……………………………………………………...….……..*16*

*Guzelgurgenli v. Prime Time Specials*

    *Inc*…………………………………………………….………15

*Herman v. Rsr Sec Servs.*

    *Ltd*…………………………………………………………14

*Hernandez v. Immortal Rise*

    *Inc*…………………………………………….………...13

*Hoffman-Laroche Inc. v*
*Sperling*…………………………………………………………5,16

*Jie Zhang v Wen Mei*

    *Inc*…………………………………………………………..9

*Khan v. Airport Mgmt Servs.*

    …………………………………………………………1

*Kispel v. Chrysler*

    *Grp*…………………………………………………….15

*Masson v. Ecolab*

*Inc*……………………………………………...…………11

*Mendoza v. Casa De Cambrio Delgado,*

    *Inc*…………………………………….…………………….6

*Myers v. Hertz*

    *Corp*…………………………………………………………………

    ….5

*Prizmic v. Armour*

    *Inc*………………………………………………………..6

*Robinson v. Ryla Teleservs,*

    *Inc*…………………………………………………………15

*Roebuck v. Hudson Valley Farms*……………………………………………………6

*Ruggles V. Well Point Inc*………………………………………………..…………………16

*Saavedra v. Mrs. Bloom's Direct Inc*…………………………………………………..11

*Severison v. Phillip Beverage Co*………………………………………………………..5

*Shanfa Li v. Chinatown Take-Out Inc*…………………………………………………6, 7

*Spack v. Trans World Entm't Corp*……………………………………………..……..13

*Taveras v. D & J Real Estate Mgmt LLC*……………………………………………..10

*Valerio v. RNC Industries LLC*………….………………………………………..………15

*Warman v. Am Nat'l Standards Inst*……………………………………………….…7

Statutes

29 U.S.C. §216(b)………………………………………………………………………1

## **PRELIMINARY STATEMENT**

Plaintiff Mireya Aguilo has moved this Court for an order (1) conditionally certifying a Fair Labor Standards Act ("FLSA") collective action under 29 U.S.C. §216(b) on behalf of "all non-management" employees who worked at who worked at the Vails Gate Processing Center located at 41 Wisner Avenue, Newburgh, New York 12550, Vails Gate Cleaners located at 115 Temple Hill Rd., New Windsor, New York 12553, Vails Gate Cleaners located at 547 Route 32, Highland Mills, New York 10930 and/or Tailorland Newburgh located at 21 Route 17K, Newburgh, New York 12550, at any time on or after September 27, 2012; (2) approving the Notice of Lawsuit with Opportunity to Join ("Notice") and Consent to Become a Party Plaintiff ("Consent") forms, (3) directing Defendants to furnish the Plaintiff in electronically readable form the names, last known addresses and telephone numbers (including cell phone numbers) of all members of the defined collective so that Plaintiff can issue the Notice and requiring that the Notice be posted within Defendants' workplaces; and (4) approving the deadline reminder notice ("Deadline Reminder") for mailing to the Collective Action Members.

For the reasons set forth herein, Plaintiff's motion must be denied in its entirety as the proposed class of "non-management employees" is far too broad to procure plaintiffs who are "similarly situated" as required to sustain a collective action under the Fair Labor Standards Act. Further, Plaintiff's self-serving declaration does not meet

even the more lenient "first step" standard of certification in an opt-in collective action under the FLSA.

Moreover, in the event should the Court decide to authorize distribution of opt-in collective action notices, the request to circulate the notice should not include employees whose claims would be time-barred under the FLSA and should be limited to three (3) years. Further, the request for a "reminder" notice to opt-in to the lawsuit is unnecessarily duplicative and will result in added expense to Defendants in administration and mailing of the collective action notice with minimal benefits to the purported plaintiffs.

## **BACKGROUND**

Defendants own and operate a small dry cleaning and laundering operation in Orange and Dutchess Counties in upstate New York, which consists of both consumer retail stores ("Vails Gate Cleaners or VGC locations") and one centralized "plant" location ("Plant" or "Plant Operation") where the garments from their clientele are laundered and/or dry cleaned (See, MASSIMI Declaration at ¶6). Although the business is a year-round operation, the bulk of Defendants operational busy season is during the summer months of June through August (See, MASSIMI Declaration at ¶8). Defendants currently operates eight (8) stores and one plant location.

### **A. Plaintiff's Employment History**

Plaintiff Mireya Aguilo ("Aguilo")  was hired on or around December 31, 2014 and worked for the Defendants till in or around August 2018. Throughout her employment, Aguilo worked at a variety of the retail locations and later at the plant location after it opened around 2016. The hours of the retail locations vary  from 7 AM-7 PM,  8AM to 6 PM, or 8:30 AM to 6 PM depending on the location and the clientele. The retail stores generally employ two employees, one who opens the store at its opening time and a relief employee who handles the 'midshift' until closing. For example, if the stores hours were from 7AM to 7PM, an employee would open the store at 7 AM and work until 4 PM and another employee would come in at 12 PM and work until 8 PM handling post-closing duties including locking up the location. While Aguilo alleges that she worked "five to six days per week, between fifty four (54) and sixty two (62) hours per week" (See, Aguilo Declaration at ¶6), these hours are wildly inaccurate as it is simply not the case of the business operation, absent a staffing shortage. Defendants, absent a sick call or other staff abnormality, generally have a relief employee at each location with significant overlap during the lunch hours from 12 PM-4 PM to allow employees to take their meal break and handle the influx of customers bringing and picking up their dry cleaning in on their lunch breaks and near the late afternoon rush.

## B. Exit 9 LLC and Vails Gate Cleaners Time Keeping Systems

When the business was formed in 2004, Defendants maintained a manual "punch card" system in which the employees were responsible for writing their time in

which they arrived and when they left.  This system was equivalent to the 'fox guarding the hen house' whereby unscrupulous employees could inflate their hours should they choose to do so. Accordingly, in or around 2014, Defendants instituted a digital time clock system in both the retail stores and in the plant location whereby each employee clocks in and clocks out, with each employee selecting their own individual  four (4) digit clock number in which to clock in and out. Defendants had maintained a policy to pay the employees for their half hour lunch period, despite not having to do so. The result was many employees including Aguilo would fail to clock out for their half hour lunch period Defendants instituted a policy whereby the employees must clock out for their unpaid lunch period to ensure that employees were clocking out for this break time. At all times, employees are paid for all hours in which they work or alleged to have worked even where the systems indicate abnormalities where employees are seemingly working before the stores open.

## C. Procedural History

Plaintiff instituted this action on September 27, 2018 (Dkt No.1, Complaint) alleging that Aguilo worked "at the Vails Gate Processing Center and two (2) of Defendants' store locations (Comp at ¶50). Plaintiff also vaguely alleged that she was required to work "a total of between fifty four and sixty two hours per week (Comp. at ¶51) without mentioning the shift hours per day. Particularly noteworthy is that the allegations is that Plaintiff cryptically extrapolates the individual employment circumstances of her allegations to a "policy that was common to all non-management

employees who worked for Defendants" without citing any other employees by name, job classification, or the details and substance of these alleged "observations and conversations." (Comp at ¶59).

Plaintiff filed her "Motion to Certify Class" pursuant to 216(b) of the Fair Labor Standards Act on March 16, 2020 (See, Dkt Nos. 32-34). At this juncture, Plaintiff submitted a declaration with now retooled allegations that Aguilo had now worked at four (4) retail locations, rather than the original two (2)  locations including the processing plant (See Aguilo Declaration at ¶5). Moreover, Plaintiff included for the first time, an allegation that she was required to work "approximately eight to thirteen hours in a single day" (See, Aguilo Decl. at ¶6) where she had never mentioned the daily hours worked in the operative complaint. Lastly, Plaintiff suddenly recalled, nearly a year and a half after the commencement of this litigation, the individual nicknames of not one, but five employees with varying job descriptions who allege to have worked for Defendants to supplement her claims that there is a " practice of failing to pay minimum wages for all hours worked and overtime premiums for all hours worked over forty (40) each week was a corporate policy." (See, Aguilo Decl. at ¶16). She names the employees as "Bethania", "Giovanny", "Carmen", "Juan", and "Guillermo" (*Id* at ¶16), none of which have filed Consents to Sue in this action despite the nearly eighteen (18) months since the commencement of this action. Notably, even this newfound allegation in Aguilo's declaration makes no reference to any factual nexus between Plaintiff Aguilo and these employees pertaining to the hours or wages of these employees. Moreover,

each of these alleged employees have different job classifications including "washer and clothing counter", "hanger and packer", "stain remover", "janitor", and "delivery driver" (*Id* at ¶16) which only further obfuscates the claims that there is somehow a systemwide corporate policy of overtime violations amongst a class of "similarly situated" individuals.

There is simply no basis for which a collective action can be maintained and the conditional certification motion should be denied in its entirety because Plaintiff has simply failed to make a sufficiently showing that the collective action members are "similarly situated" with respect to Plaintiffs' FLSA claims. The purported class of all "non-management employees" is not a proper "similarly situated" class or group of employees, the allegations are not sufficient to create the requisite "factual nexus" between Plaintiff Aguilo and potential opt-in Plaintiffs were subject to same common policy or plan that violated the law to create a collective class under  29 U.S.C.  §216(b).

<u>**ARGUMENT**</u>

<u>**POINT I**</u>

<u>**CONDITIONAL CERTICATION SHOULD BE DENIED BECAUSE PLAINTIFFS ARE NOT SIMILARLY SITUATED TO THE PUTATIVE COLLECTIVE ACTION MEMBERS**</u>

**A. Applicable Standard For a Collective Action Under the FLSA**

The FLSA provides for collective actions through an "opt in" procedure. 29 U.S.C. § 216(b). However, a collective action should proceed only where it will facilitate a court's ability to resolve multiple claims efficiently in one proceeding.  See Hoffman-

La Roche, Inc. v. Sperling, 493 U.S. 165, 170 (1989); see also Severtson v. Phillips Beverage Co., 137 F.R.D. 264, 266 (D. Minn. 1991). For that reason, section 216(b) provides that only similarly situated employees may utilize the opt-in procedure. Courts in the Second Circuit utilize a two-tiered approach when deciding whether an FLSA suit may proceed as a collective action.   Myers v. Hertz Corp., 624 F.3d 537, 554 (2d Cir. 2010); Jenkins v. TJX Cos., 853 F. Supp. 2d 317, 320 (E.D.N.Y. 2012); Khan v. Airport Mgmt. Servs., LLC, 2011 U.S. Dist. LEXIS 133134 (S.D.N.Y. Nov. 16, 2011).

The first stage of this two-tiered process is the notice stage. At this stage, the court undertakes examination of plaintiff's pleadings and affidavits to determine whether the plaintiff and the other members of the proposed class are sufficiently "similarly situated" to warrant the issuance of notice to putative class members and to permit it to proceed as a collective action through discovery.  See  Fengler  v. Crouse Health Found.,  Inc., 595 F. Supp. 2d 189 (N.D.N.Y 2009).   In order to satisfy this initial burden, the plaintiff must show that he and the potential plaintiffs "together were victims of a common policy or plan that violated the law." Roebuck v. Hudson Valley Farms, 239 F. Supp. 2d 234, 238 (N.D.N.Y 2002)(plaintiffs must demonstrate that they and the putative collective action members together "were victims of a common policy or plan that violated the law")(citations omitted). Although the plaintiff's burden at this initial stage "is not onerous," the plaintiff "must provide actual evidence of a factual nexus between his situation and those that he claims are similarly situated rather than mere conclusory allegations."   Prizmic v. Armour, Inc., 2006 U.S. Dist. LEXIS 42627

(E.D.N.Y. June 12, 2006)(citations omitted).  "Absent such a showing, an employer may be 'unduly burdened by a frivolous fishing expedition conducted by  plaintiff at the employer's expense.'" Id. at *7 (citations omitted); see also Mendoza v.  Casa  De Cambio Delgado, Inc., 2008 U.S. Dist. LEXIS 27519 (S.D.N.Y.  Apr. 7, 2008)("conclusory allegations or lack of a nexus with the putative class will prevent the case from moving forward as a collective action.").

**B. Plaintiff Has Failed to Satisfy the Standard for Collective Certification**

Plaintiff has not met her burden to establish that she is similarly situated of the broadly defined putative class of "all non-management employees."  In Shanfa Li v. Chinatown Take-Out Inc., Shanfa Li v. Chinatown Take-Out Inc., No. 16 CIV. 7787 (JCM), 2018 WL 1027161 (S.D.N.Y. Feb. 21, 2018) (McCarthy, J), this court held "the factual record supporting this motion, limited to the complaint and the affidavits of the two named plaintiffs, "is insufficient to support even an inference that a common policy or plan that violated the law existed with respect to this variety of potential opt-in plaintiff." Your Honor noted specifically that "Neither affidavit, however, contains "substantial allegations" demonstrating a "factual nexus" between named Plaintiffs and the potential opt-in plaintiffs…He did not tell me what other employees made, but said that he had received complaints from other people as well." This statement, by itself, is not a "sufficient factual basis on which to conditionally certify a FLSA collective action as to all of Defendants' non-managerial employees[.]"

Here, as in the Shanfa case, Plaintiff attempts to show that she is similarly situated by relying on a single affidavit replete with conclusion assertions signed by Plaintiff Aguilo. Aguilo's declaration fails to explain how much the other employees made, only that she had "observed and/or spoke with the following employees regarding their long hours and low wages." (See, Aguilo Dec. at ¶16). It is difficult to imagine that Aguilo, who managed to work for the Defendants for the better part of four (4) years, would seemingly be unable to recall specific conversations regarding these employees hours, wages, as well as know their actual names, rather than their pseudonyms or "nicknames.[1]" Moreover, it bear noting that each of these employees had varying job duties according to Aguilo's own declaration, which would hardly classify this litigation ripe for collective action as none of these purported employees could possibly be considered similarly situated.  In short, the burden although a low threshold at this stage, Plaintiff has filed to provide even menial support required at this stage to justify a costly and time consuming collective action process.

It bears noting that although  "the relevant issue is not whether the named plaintiff and potential opt-in plaintiffs are identical in all respects, but, rather, whether they all allegedly were subject to a common employment policy that violated the FLSA.")." "To meet their burden, Plaintiffs were obligated to provide 'some probative

---

[1] Plaintiff Aguilo's Declaration (Dkt No. 33-2) lists five employees without their actual names, but rather nicknames or pseudonyms in quotations as well as with varying job responsibilities. "…Specifically, I observed and/or spoke with the following employees regarding their long hours and low wages "Bethania" (washer and clothing counter), "Giovanny" (hanger, packer, and clothing ticker), "Carmen" (washer and stain remover), "Juan" ("janitor") and "Guillermo" (delivery employee").

information regarding similarly situated employees such as their names, their duties and their hours worked.' " See, Warman v. Am. Nat'l Standards Inst., 193 F. Supp. 3d 318, 323 (S.D.N.Y. 2016) Here,  Aguilo  could neither name nor describe specific policy, plan or the circumstances on which she bases her  claim. Nor did the nicknamed employees in Aguilo's declaration submit their own declarations in support, nor did they file opt in notices to the litigation.  Accordingly, "Where  the named plaintiff is unable  to state clearly and specifically  to whom  it is that she contends she is similarly situated, it is not possible for the Court to conclude that a collective action certification is warranted."      See, Flores v. Osaka Health Spa. Inc., 2006  U.S. Dist. LEXIS 11378 (SDNY 2006).

Therefore, this Court should therefore deny Plaintiff's motion for conditional certification because Plaintiff has failed to demonstrate through their operative pleading or through Aguilo's own single declaration, the "substantial allegations" standard required by this court as outlined by Your Honor in Shanfa Li v. Chinatown Take-Out Inc.

## POINT II

## THE PROPOSED COLLECTIVE AND NOTICE TO COLLECTIVE SHOULD BE MODIFIED IN THE EVENT THAT THE COURT GRANTS CONDITIONAL CERTIFICATION

### A.  The Proposed Collective Class is Overly Broad

Plaintiff seeks to certify a collective consisting of "of all non-management employees who worked at the Vails Gate Processing Center in Newburgh, New York; Vails Gate Cleaners located at 115 Temple Hill Rd, New Windsor, New York; and/or Tailorland Newburgh located at 21 Route 17K, Newburgh, New York at any time on or after September 27, 2012 to  the present (See, Dkt No 34, Plaintiff Memorandum of Law at *6-*7). Plaintiff seeks to extrapolate her individual circumstances regarding her purported individual working environment onto an entire workforce. The "non-management employee" collective is entirely broad and wholly based on Aguilo's individualized allegations which are entirely narrowly tailored and self-serving.

Defendants employ store clerks and pressers such as Aguilo in their day to day operations (See MASSIMI Declaration at ¶9). Therefore, in the event the Court decide to grant the conditional certification, the collective class should be limited to employees who were "pressers" or "store clerks" during their employment.   Plaintiff's overreaching and broad inclusion of "all non-managerial employees" includes all employees beyond the scope of work of Aguilo and is well beyond the intent of the 216(b) collective action's remedial purpose. The Notice provisions of 216(b) were intended to achieve judicial efficiency by settling the claims of similarly situated employees at the same time. Hoffmann, 493 U.S. at 170, 110 S.Ct. 482. See, Fasanelli v. Heartland Brewery, Inc., 516 F. Supp. 2d 317, 323 (S.D.N.Y. 2007). Judicial efficiency would hardly be achieved by sending notices out to any employee who ever worked for Defendants under any job title or classification.

**B. The Collective Should Be Limited to Employees Employed Within Three Years from September 27, 2018**

While Defendants maintain that Plaintiff should not be permitted to send out notices to employees and former employees inviting them to join the lawsuit, we set forth our objections to the proposed Notice submitted to the Court by the Plaintiff in the event that the Court rules that such notices may be sent out by Plaintiff. Defendants' proposed Notice is annexed to the Portesy Declaration as Exhibit D.

The Notice proposed by Plaintiff's counsel is addressed to "All current and former non-management employees who worked at the Vails Gate Processing Center located at 41 Wisner Avenue, Newburgh, New York 12550, Vails Gate Cleaners located at 115 Temple Hill Rd., New Windsor, New York 12553, Vails Gate Cleaners located at 547 Route 32, Highland Mills, New York 10930 and/or Tailorland Newburgh located at 21 Route 17K, Newburgh, New York 12550, at any time on or after September 27, 2012 through        [enter date of 216(b) Order]." The Court should limit the notice to employees from the past three years. Courts in this circuit have routinely limited notice distribution to employees within the past three years.

"At the conditional certification stage, allegations of willful conduct are sufficient to apply the three-year statute of limitations for purposes of certifying the class." Jie Zhang v. Wen Mei, Inc., No. 14–CV–1647, 2015 WL 6442545, at *5 (E.D.N.Y. Oct. 23, 2015) (citing Summa, 715 F.Supp.2d at 388; Francis v. A & E Stores, Inc., No. 06–CV–1638, 2008 WL 2588851, at *3 (S.D.N.Y. June 26, 2008) (noting that at the

preliminary stage, "plaintiff's allegations of willful conduct ... are sufficient to support defining the class based upon the three-year statute of limitations). See, Valerio v. RNC Indus., LLC, 314 F.R.D. 61, 73–74 (E.D.N.Y. 2016). The statute of limitations applicable to a claim for unpaid wages and/or overtime compensation under the FLSA is two years from the date that the claim accrued or three years for a cause of action arising out of a willful violation. 29 U.S.C. § 255(a); Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 141 (2d Cir. 1999). "At the conditional certification stage, allegations of willful FLSA violations are sufficient to apply the three-year statute of limitations for purposes of sending a notice to putative members of the collective." Francis v. A & E Stores, Inc., No. 06-cv-1638 (CLB) (GAY), 2008 WL 2588851, at *3 (S.D.N.Y. June 26, 2008), adopted as modified, 2008 WL 4619858 (S.D.N.Y. Oct. 16, 2008). See Garcia v. Chipotle Mexican Grill, No. 16-cv-601 (ER), 2016 WL 6561302, at *9 (S.D.N.Y. Nov. 4, 2016) (finding a three-year notice period appropriate at this stage "[g]iven the fact that willfulness is disputed"). See, Taveras v. D & J Real Estate Mgmt. II, LLC, 324 F.R.D. 39, 41 (S.D.N.Y. 2018). Accordingly, should the Court authorize distribution of the notice, it should be limited to three (3) years from the date of the filing of the action on September 27, 2018.

### C. Modifications To The Notice

#### a. Elimination of the "From Paragraph" And the "Questions" Paragraph Footer

Plaintiff's notice includes its' law firm's information as the very first clause of the Notice Of Lawsuit. To the layperson, it appears as an advertisement for "Pelton Graham  LLC." There is no discernable reason for Plaintiff's counsel's information to be depicted at the top of the notice before any information about the lawsuit is displayed. It is a form of attorney advertising that is unnecessary. It is also duplicative as Plaintiff's counsel's information is depicted a total of three (3) times throughout the notice.

In addition, Plaintiff's counsel has inserted a footer at the bottom of each page stating "Questions? Please call Pelton Graham at 212-385-9700." It should not be Defendants' obligation to perform marketing services for Plaintiff's counsel on a Court Ordered Notice should the Court grant conditional certification. Accordingly, Defendants requests removal of the "From" paragraph and the footer paragraphs.

### b. Notice Should Alert Recipients to Their Own Potential Involvement Including Participation in Discovery

Plaintiff's notice fails to  alert recipients to their own potential involvement in the action, including a statement that, if they join the lawsuit, they may be required to provide documents, answers to interrogatories, sit for a deposition, or testify in Court. The inclusion of this provision is critical as many plaintiffs who join the action, but later realize they must answer interrogatories or sit for a deposition, may decide they do not want to participate in the lawsuit and withdraw consent forms, as happened in Masson v. Ecolab, 2005 U.S. Dist. LEXIS 18022 (S.D.N.Y. 2005). If the Court grants

conditional certification, the Defendants will be seeking discovery from each and every opt-in plaintiff. It is important for the potential opt-ins to know they will be required to participate and it is not an option to opt-in and not participate in the discovery process.

### c. Posting Of Notice Should Not Require Posting at Retail Locations

Plaintiff seeks to post the notice "in a conspicuous location at all four locations" (See Plaintiff's Memorandum of Law at ¶10. This vague request includes posting at Defendants' retail locations where customers would be able to see that there is a pending lawsuit. It would be highly prejudicial to Defendants' business if each customer who dropped off garments could view this notice. It goes without saying that Defendants would lose significant business if they were forced to post this notice in the retail locations. The business ramifications to Defendants would be crushing in an environment where it already is closing locations. Accordingly, the Court should limit the posting of the notice to the Defendants' Plant.

### d. Joining Lawsuit Does Not Require the Opt-Ins to Agree To Plaintiffs' Counsel's Representation

Paragraph III of the notice states " If you sign and return the attached form, you will be represented by Plaintiffs' counsel at the following address: PELTON GRAHAM LLC, 111 Broadway, Suite 1503 New York, New York 10006. Telephone: (212)-385 9700 Facsimilie (212) 385-0800 Email: pelton@peltongraham.com." Plaintiff's should

have the ability to set their own fee arrangement and hire their own lawyers. As such, this section should be modified to state " If you sign and return the attached form, you may join this case either by retaining a lawyer of your own choosing. If you do so, your attorney must file an "opt-in" consent form with the Court on or before [insert date that is 45 days from date of notice mailing]. The address of the Court is: U.S. District Court for the Southern District of New York, U.S. District Court, 300 Quarropas St., White Plains, N.Y. 10601. The Clerk cannot give legal advice about this case.

### e.  Modification to Section "Counsel For Defendants"

Plaintiffs have left this section blank in their proposed notice other than providing Defendants' counsel's mailing information and fax number. Defendants propose the following language: "Should you have any questions regarding this lawsuit, you may reach  Defendants' counsel Anthony Portesy, Esq of Varacalli & Hamra LLP by phone at 646-590-0571 or first class mail addressed to: Anthony R. Portesy, Esq., Varacalli & Hamra LLP, 32 Broadway, New York, NY 10004.

### f.  No Retaliation Language Should be Removed

Defendants request that the Court strike the anti-retaliation language included in the proposed notice as there is no evidence of retaliation and there is no need for the inclusion of anti-retaliation language. it is well-established that "[c]ourts have broad discretion to craft appropriate notices that effectuate the overarching policies of the collective suit provisions and provide employees with accurate and timely notice concerning the pendency of the collective action, so that they can make informed

decisions about whether to participate." Cabrera v. Stephens, No. 16-CV-3234 (ADS)(SIL), 2017 WL 4326511, at *8 (E.D.N.Y. Sept. 28, 2017) (quoting Hernandez v. Immortal Rise, Inc., 11-cv-4360, 2012 WL 4369746, at *6 (E.D.N.Y. Sept. 24, 2012) (internal quotation omitted) See, Spack v. Trans World Entm't Corp., No. 117CV1335TJMCFH, 2019 WL 192344, at *11 (N.D.N.Y. Jan. 15, 2019). As the Court has ample discretionary power, the Court should exercise its authority to reject this provision should it grant conditional certification.

### g. Immigration Status Language Is Unnecessary

The Second Circuit caselaw and Supreme Court precedent governing immigration rights under the FLSA are so well established that this language is absolutely unnecessary. "The law in this Circuit is clear that a plaintiff's immigration status has no bearing on her rights to recover unpaid wages under the FLSA or New York Labor Law", see Liu v. Donna Koran International, Inc., 207 F. Supp. 2d 191, 193 (S.D.N.Y. 2002), Saavedra v. Mrs. Bloom's Direct, Inc., No. 17-CV-2180 (OTW), 2018 WL 2357264, at *3 (S.D.N.Y. May 24, 2018). The parties gain nothing from its inclusion, but it bears noting plaintiff's counsel has added a section about "not needing to have a record of the hours you worked in order to participate in the lawsuit." Defendants contend this sentence is not relevant to the immigration status section and in the event the Court decides to leave the immigration status language, the Court should remove this last sentence.

### h. Opt In Notice Timing Should be Limited to Forty Five Days

Plaintiff proposed sixty (60) days for the window in which Plaintiffs may opt-in to the lawsuit. Defendants believe this notice should be limited to forty five (45) days. "Courts generally restrict the opt-in period to 45 to 60 days. See, Bittencourt v. Ferrara Bakery & Cafe Inc., 310 F.R.D. 106, 117 (S.D.N.Y. 2015) "While some courts have granted up to 90 day opt-in periods, they generally do so where the period is agreed upon between the parties or special circumstances require an extended opt-in period." Whitehorn, 767 F.Supp.2d at 452 (collecting cases). Here, the plaintiff has not identified circumstances that would require an extended period beyond forty five (45) days. Accordingly, the plaintiff should be required to amend the notice to provide for opt-in plaintiffs to consent to join the action within 45 days of the date of the notice.

### i. Consent To Sue Form Should be Modified to Contain Only Plaintiff's Name, Address, and Signature

Plaintiff's proposed "Consent to Become A Party Plaintiff" includes spaces for the potential opt in plaintiff's name, address, signature, email, telephone number, as well as start and end dates of employment. Plaintiff's use of the Consent Form is an attempt to use the Court Ordered Notice as a discovery device rather than obtain the information after the potential opt in has opted into the litigation and signed a retainer agreement with Plaintiff's counsel. This is highly irregular and improper. The discovery portion of this litigataion is separate and distinct from the notice of pendency portion of the litigation. As such, should the Court grant conditional certification, it should amend Plaintiff's Consent to Become A Party Plaintiff form to reflect only the name,

address and signature of the plaintiff who has opted in or in the alternative, accept the

Defendants' Proposed Consent form annexed to the Portesy Declaration as Exhibit F.

## POINT III

## PLAINTIFF'S REQUEST FOR CELLPHONE CONTACT

## NUMBERS AND A REMINDER NOTICE FOR A COLLECTIVE

## IS UNNECESSARY AND BURDENSOME

### A. Reminder Notice Is Unnecessary

Courts generally deny requests to provide for reminder notices "on the grounds

that the reminder is unnecessary and …could be interpreted as encouragement by the

court to join the lawsuit." Guzelgurgenli v. Prime Time Specials, Inc., 883 F. Supp. 2d

340, 357 (E.D.N.Y. 2012) (internal quotations and citation omitted). This approach has

been followed in other Circuits as well. See, ' Knispel v. Chrysler Grp. LLC. 2012

WL 553722, at *8 (E.D.Mich. Feb. 21, 2012); Robinson v. Ryla Teleservs., Inc., 2011

WL 6667338, at *4 (S.D.Ala. Dec. 21, 2011). In fact, the main reason Defendant has

looked to outside circuits for decisions on this matter is because this issue has not been

extensively litigated in this Circuit. This is because "most plaintiffs do not send

reminder notices [and] no great harm result[s]" from a plaintiffs choice not to send

one. Guzelgurgenli, 883 F. Supp.2d at 358. Here, Plaintiff has failed to establish any

reason as to why a reminder notice is necessary, or how harm may result from a failure

to provide for one. Moreover, should the Court grand conditional certification and

grant Defendants request to limit the notice to forty five (45) days, the window is so

short, it is unlikely a plaintiff would need a reminder notice. Defendants' view is that the "reminder notice" is merely a red herring for the plaintiff's counsel to get a "second bite of the apple" to try to entice additional opt in plaintiffs to send an opt in notice by sending a second "reminder" notice. In the event the Court grants conditional certification and allows a reminder notice, Defendants request that the costs associated with this unnecessary notice be bore 100% by Plaintiff's counsel.

## B. Cellphone Numbers Are Inherently Personal And Defendants Should Not Be Required to Procure This Information to Plaintiffs.

Should the Court grant conditional certification, Plaintiff is not entitled to the inherently private information that Plaintiff requests from the putative class members. Plaintiff requests the following categories of information for all employees in Plaintiff's defined putative class: (i) their names, (ii) last known address, (iii) telephone number (including cellphone numbers) (See, Plaintiff's Memorandum of Law at ¶1). Plaintiff provides absolutely no authority for obtaining this inherently private information. Courts in this Circuit, and elsewhere, have held that plaintiffs have "no need for [such] inherently private information . . .    including e-mail addresses, telephone numbers, social security numbers, and dates of birth."  Fengler v. Crouse Health Found., Inc., 595 F. Supp. 2d 189, 198 (N.D.N.Y 2009);  Ruggles v. WellPoint, Inc., 591 F. Supp. 2d 150 (N.D.N.Y 2008)(denying plaintiff's request to include potential plaintiff's telephone numbers or the last four digits of their social security numbers); Gordon v. Kaleida Health, 2009 U.S. Dist LEXIS 95729, at *31 (W.D.N.Y. Oct 14, 2009) ("[t]he Court

agrees that, in the interest of privacy, Kaleida need not produce phone numbers, social security numbers, dates of birth, and e-mail addresses"); Delaney v. Geisha NYC, LLC, 261 F.R.D. 55, 60 (S.D.N.Y. 2009)(holding that only if plaintiffs found that a large number of notices were returned as undeliverable would the Court even consider the request for disclosure of social security numbers).Plaintiff has failed to distinguish what the use and/or need would be for the personal phone numbers when they are going to send a notice in the mail. As such, Plaintiffs are entitled to the names and last known address of the purported class member and should not be entitled to their phone numbers including cellphone numbers.

While Defendants steadfastly maintain that collective action certification is wholly unwarranted, in the event the Court grants Plaintiff's Motion,  Defendants request leave of Court to file a substitute proposed notice that complies with the Supreme Court's requirements set forth in Hoffman-LaRoche Inc. v. Sperling, 493 U.S. 165 (1989), and cures the fatal deficiencies in the proposed notice or in the alternative adopt Defendant's Notice annexed to the Portesy Declaration as Exhibit D**.**

## CONCLUSION

Viewing the allegations in the most favorable light toward the Plaintiff, the gravamen of Plaintiff's allegations in her pleading rests in an individual capacity, rather than a collective action capacity. In an attempt to expand the claims to a non-existent broad class of non-similarly situated employees, Plaintiff has over extended their allegations well beyond those intentioned under the Fair Labor Standards Act.  As such,

for the reasons set forth herein, the Plaintiff's Motion to Certify a Collective Action Under 216(b) should be denied in its entirety and the case should proceed as an individual plaintiff action.

Respectfully Submitted,

Anthony R. Portesy, Esq
Attorneys for Defendants
32 Broadway, Suite 1818
New York, NY 10004
Tel: 646-590-0571
Email: aportesy@vhllp.com

22