UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------X
MIREYA AGUILO, Individually and on
Behalf of All and Others Similarly Situated,

                        Plaintiff,                        **OPINION AND ORDER**

            -against-                                     18 Civ. 8850 (PMH) (JCM)

VAILS GATE CLEANERS INC., EXIT 9,
LLC and RICHARD MASSIMI, Jointly
and Severally,

                        Defendants.
-----------------------------------------------------X

On September 27, 2018, Plaintiff Mireya Aguilo ("Plaintiff" or "Aguilo") individually

and on behalf of all others similarly situated commenced this action under the Fair Labor

Standards Act ("FLSA") and the New York Labor Law ("NYLL") against Vails Gate Cleaners,

Inc. ("Vails Gate"), Exit 9, LLC ("Exit 9"), and Richard Massimi ("Defendant Massimi")

(collectively, "Defendants"). (Docket No. 1).  Plaintiff alleges that she and all other non-

management employees were not paid the statutory minimum wage and overtime compensation

for hours worked in excess of forty hours per week. (*Id.*).  Presently before the Court is

Plaintiff's motion for (1) conditional certification as a collective action under 29 U.S.C. §

216(b); and (2) approval of Plaintiff's proposed notice and consent form. (Docket No. 32).

Defendants opposed the motion on May 1, 2020, (Docket Nos. 37-39), and Plaintiff filed a reply

on May 8, 2020, (Docket No. 40).  For the reasons set forth below, Plaintiff's motion is granted

in part and denied in part.[1]

---

[1] On January 30, 2020, the Honorable Nelson S. Román referred this matter to the undersigned for general pretrial
supervision. (Docket No. 28).  Thereafter, on April 3, 2020, the case was reassigned to the Honorable Philip M.
Halpern.  While neither party raises this issue, the Court notes at the outset that the Court has the authority to issue
orders on conditional certification motions in FLSA collective actions. *See Zhongle Chen v. Kicho Corp.*, 18 CV
7413 (PMH)(LMS), 2020 WL 1900582, at *1 n.1 (S.D.N.Y. Apr. 17, 2020) (noting that magistrate judges have the

## I. BACKGROUND[2]

Vails Gate and Exit 9 are both active New York corporations that are owned and operated by Defendant Massimi. (Docket No. 1 ¶¶ 11-12, 17).  Plaintiff alleges that the Defendants owned thirteen dry cleaning and laundry service locations in New York during the relevant time period. (*Id.* ¶ 41).

Plaintiff commenced employment with the Defendants in December 2013. (Aguilo Decl.[3] ¶ 1).  Aguilo asserts that her duties "primarily consisted of the 'finisher' steps of the laundry process, including folding and pressing the clean laundry pieces of clothing in a specialized steam machine," "packing and organizing clothes to be delivered to customers," and inspecting clothing to determine whether it was in good condition. (*Id.* ¶ 2).  Aguilo claims that she typically worked five to six days per week from approximately 8:00 a.m. until 6:00 p.m. or 7:00 p.m., totaling between 54 and 62 hours each week, but that the "summers were often more hectic than winters." (*Id.* ¶ 6).  Aguilo initially worked at the Vails Gate location at 115 Temple Hill Road in New Windsor, NY from December 2013 to December 2014 and was then "based at the Vails Gate Processing Center located at 41 Wisner Avenue, Newburgh, New York" from approximately April 2015 through August 2018. (*Id.* ¶ 3).  Aguilo also worked at two other retail locations during her employment: (1) Tailorland at 21 Route 17K in Newburgh, NY from January 2015 to April 2015; and (2) the Highland Mills location at 547 Route 32 in Highland Mills, NY. (*Id.*).

---

authority to issue orders on motions for conditional certification "and need not issue a Report and Recommendation") (collecting cases).

[2] Unless otherwise stated, the following facts are taken from the Complaint and Plaintiff's Declaration. *See Viriri v. White Plains Hosp. Med. Ctr.*, 320 F.RD. 344, 347 (S.D.N.Y. 2017).

[3] Refers to the declaration of Plaintiff Mireya Aguilo in support of Plaintiff's motion to conditionally certify the proposed collective. (Docket No. 33-2).

Aguilo maintains that she was paid by the hour and received her wages by cash, check, or some combination of the two, accompanied by "a wage statement that did not reflect the accurate number of hours [she] … worked during the workweek." (Aguilo Decl. ¶ 7).  Aguilo was paid $7.00 per hour from the beginning of her employment until June 2015, when her hourly wage increased to $9.00 per hour for a maximum of 35 hours per week, with every additional hour paid at the $7.00 per hour rate. (*Id.*, *see also* Docket No. 1 ¶ 52).  Aguilo contends that her hourly rate increased to $10.40 in March 2018, but she was still paid $7.00 per hour for all hours worked in excess of 35 hours per week.[4] (Aguilo Decl. ¶ 8).

Aguilo claims that she was paid below the statutory minimum wage for "a large portion" of her employment and never received overtime premiums for hours worked in excess of 40 hours a week. (Docket No. 1 ¶¶ 54-55; Aguilo Decl. ¶¶ 11, 14).  Aguilo further maintains that the Defendants did not provide her with an accurate paystub or wage statement setting forth her hourly rate or hours worked. (Docket No. 1 ¶¶ 57-58).  Aguilo explains that the Defendants asked her to keep track of her own hours, and that she was "instructed by Manager 'Natasha' to write the time when [she] arrived … the time when [she] finished [her] shift, and the total number of hours worked during the shift." (Aguilo Decl. ¶ 10).  Aguilo kept track of her own time on paper from December 2013 until around 2015, when Defendants began tracking her hours on a scanner machine. (*Id.*).  Aguilo contends that Defendant Massimi was "adamant in his position that he does not pay overtime premiums," and that the Defendants maintained a corporate policy that resulted in a failure to pay other employees the statutory minimum wage, overtime and spread-of-hours premiums, or provide adequate wage statements and notices. (*Id.* ¶¶ 15-17; Docket No. 1 ¶¶ 59, 61-68).  Aguilo learned that this policy was applied to other

---

[4] The Complaint alleges that Aguilo was paid $10.50 per hour for all hours worked from March 2018 through the end of her employment. (Docket No. 1 ¶ 52).

employees through observations and conversations with: (1) "Bethania," a washer and clothing counter at the 115 Temple Hill Rd location in New Windsor, NY; (2) "Giovanny," a hanger, packer, and clothing ticketer at the 41 Wisner Avenue location in Newburgh, NY; (3) "Carmen," a washer and stain remover at the 41 Wisner Avenue location; (4) "Juan," a janitor and general service employee at the 41 Wisner Avenue location; and (5) "Guillermo," a delivery employee who worked at all locations. (Aguilo Decl. ¶ 16).

## II.  DISCUSSION

Plaintiff seeks to conditionally certify a collective of all non-managerial employees who worked at four of Defendants' facilities at any time from September 27, 2012 to the present. (Docket No. 34 at 6, 11-12[5]).  Defendants argue that Plaintiff fails to allege with sufficient specificity the nexus between herself and all non-managerial employees or that all non-managerial employees were victims of a common policy or plan that violated the law. (Docket No. 37 at 13-14).  In the alternative, Defendants assert that if the Court grants conditional certification, the collective should be "limited to employees [such as Plaintiff] who were 'pressers' or 'store clerks'[6] during their employment." (*Id.* at 19).

## A.  Conditional Collective Action Certification Standard

Under the FLSA, a plaintiff may seek certification to proceed as a collective action, thus providing other "similarly situated" employees the opportunity to join the litigation. 29 U.S.C. § 216(b).  Courts in the Second Circuit employ a two-step certification process for an FLSA collective action. *See, e.g.*, *Johnson v. Carlo Lizza & Sons Paving, Inc.*, 160 F. Supp. 3d 605, 610 (S.D.N.Y. 2016).  The first step, at issue in the instant case, is commonly referred to as

---

[5] The page numbers cited correspond to the numbers affixed upon the electronic filing of the document.

[6] In his declaration filed in opposition to Plaintiff's motion, (Docket No. 38), Defendant Massimi explains that he "generally employ[s] two types of workers in [his] business, 'store clerks,' who work in the retail stores and 'pressers and folders' who work in the plant location." (Massimi Decl. ¶ 9).

conditional certification. *See Morris v. Lettire Const. Corp.*, 896 F. Supp. 2d 265, 269 (S.D.N.Y. 2012).  At this stage, "the court mak[es] an initial determination to send notice to potential opt-in plaintiffs who may be 'similarly situated' to the named plaintiff[] with respect to whether a FLSA violation has occurred." *Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010).  The plaintiff bears the burden of making a "modest factual showing" that the named plaintiff and the potential opt-in plaintiffs "together were victims of a common policy or plan that violated the law." *Id.* (quoting *Hoffman v. Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997) (Sotomayor, J.)).

"The plaintiff's burden at the first stage is very low." *Morris*, 896 F. Supp. 2d at 269 (quotation marks omitted).  The modest factual showing "cannot be satisfied simply by unsupported assertions … but it should remain a low standard of proof because the purpose of this first stage is merely to determine whether similarly situated plaintiffs do in fact exist." *Johnson*, 160 F. Supp. 3d at 610 (citations and internal quotation marks omitted).  "Nevertheless, while a plaintiff's burden of proof is low, it is not non-existent [and] certification is not automatic." *Sanchez v. JMP Ventures, L.L.C.*, No. 13 Civ. 7264 (KBF), 2014 WL 465542, at *1 (S.D.N.Y. Jan. 27, 2014) (internal quotation marks omitted).  To warrant conditional certification, the plaintiff must offer "substantial allegations" demonstrating a "factual nexus" between themselves and the potential opt-in plaintiffs. *Diaz v. S & H Bondi's Dep't Store*, No. 10 Civ. 7676 (PGG), 2012 WL 137460, at *3 (S.D.N.Y. Jan. 18, 2012) (internal quotation marks omitted).  However, she may rely on pleadings and declarations, as well as hearsay statements contained therein, to meet this burden. *See Morris*, 896 F. Supp. 2d at 269; *see also Warman v. Am. Nat'l Standards Inst.*, 193 F. Supp. 3d 318, 323 (S.D.N.Y. 2016) ("Indeed, the burden is so low that even one or two declarations establishing the common plan may suffice.").  In

determining whether the plaintiff has met this burden, the court will not weigh the merits of the underlying claims, attempt to resolve factual disputes, or evaluate credibility. *See Morris*, 896 F. Supp. 2d at 269.  Rather, the role of the court at this stage is to ascertain whether the plaintiff has made the "modest factual showing that [s]he and the potential opt-in plaintiffs were victims of a common policy or plan that violated the law." *Id.* (internal quotations omitted).

"At the second stage, the district court will, on a fuller record, determine whether a so-called 'collective action' may go forward by determining whether the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs." *Myers*, 624 F.3d at 555.  If the record reveals that the opt-in plaintiffs are not "similarly situated" to the named plaintiffs, defendants may move for decertification and the opt-in plaintiffs' claims may be dismissed without prejudice. *See id.*

**B.  Adequacy of Plaintiff's Showing**

Plaintiff seeks to conditionally certify a collective of all non-managerial employees who worked at the following four locations at any time from September 27, 2012 to the present: (1) Vails Gate Processing Center at 41 Wisner Avenue, Newburgh, New York 12550; (2) Vails Gate Cleaners at 115 Temple Hill Rd, New Windsor, New York 12553; (3) Vails Gate Cleaners at 547 Route 32, Highland Mills, New York 10930; and (4) Tailorland Newburgh at 21 Route 17K, Newburgh, New York 12550. (Docket No. 34 at 6-7, 18).  Defendants argue that neither the Complaint nor Aguilo's declaration sufficiently demonstrate that Plaintiff is similarly situated to all non-managerial employees, and, in the alternative, that the proposed collective of all non-managerial employees is overly broad. (Docket No. 37 at 16-19).  After careful review, the Court finds that Plaintiff has made the modest factual showing necessary to warrant conditional certification of a collective of pressers, folders, and laundry employees, but not all non-

managerial employees.  Aguilo asserts that she "typically worked well in excess of forty (40) hours per week," did not receive overtime or spread-of-hours premiums, and was paid less than the minimum wage for the majority of her employment with Defendants. (Aguilo Decl. ¶¶ 11, 13, 14).  Aguilo explains that she "learned [of minimum wage and overtime violations] through conversations with other employees and observations regarding the hours worked by [her] coworkers at the Vails Gate Processing Center in Newburgh, New York and the three (3) other locations where [she] used to work." (*Id.* ¶ 16).  Aguilo names three individuals she spoke with – "Bethania," a washer and clothing counter employee, "Giovanny," a hanger, packer, and clothing ticketer, and "Carmen," a washer and stain remover. (*Id.*).  All three performed similar duties, and maintain that they were not paid minimum wage, spread-of-hours or overtime. (*Id.* ¶¶ 16-17).  These employees "were [also] paid their wages at the end of the week either in cash, or in a combination of cash and check, with a pay stub or a wage statement that [did] not reflect the accurate number of hours [they] worked during the week." (*Id.* ¶ 17).

The Court finds that Aguilo's declaration and the Complaint together establish the "modest factual showing" necessary to justify conditional certification of employees who performed work similar to her. *Myers*, 624 F.3d at 555; *see also Garcia v. Spectrum of Creations Inc.*, 102 F. Supp. 3d 541, 545, 548–49 (S.D.N.Y. 2015) (granting conditional certification where plaintiffs relied on two declarations that "describe[d] the duties of workers and the practices of management at a single location based on their personal observations and on interactions with specifically identified employees," and also noting that "[w]hile it would be helpful to have the time and dates of conversations, it is not surprising that plaintiffs would be unable to recall such specifics"); *Khamsiri v. George & Frank's Japanese Noodle Rest. Inc.*, No. 12 Civ. 265 (PAE), 2012 WL 1981507, at *1 (S.D.N.Y. June 1, 2012) (granting conditional certification where

plaintiff submitted her own declaration "confirming that she and other non-exempt employees …
in tipped positions, who performed work similar to hers, were, *inter alia*, paid less than the
statutory minimum wage and not paid overtime pay.").

While Defendants argue that Plaintiff's single declaration is insufficient to meet the
modest factual burden necessary to warrant conditional certification, courts in this district have
certified collectives based on a single declaration alleging wage and hour violations based on
personal observations and conversations with fellow employees who performed similar duties.
*See, e.g.*, *Sanchez v. Gansevoort Mgmt. Grp., Inc.*, No. 12 Civ. 75 (KBF), 2013 WL 208909, at
\*1 (S.D.N.Y. Jan. 10, 2013) (granting conditional certification based on the pleadings and an
affidavit from the named plaintiff where he asserted that he observed other employees
performing his same job duties work more than 40 hours per week and not receive overtime
pay); *Hernandez v. Bare Burger Dio Inc.*, No. 12 Civ. 7794 (RWS), 2013 WL 3199292, at \*3
(S.D.N.Y. June 25, 2013) (granting conditional certification where a single declaration from the
named plaintiff confirmed that other non-exempt employees who performed similar work were
not paid the statutory minimum wage, overtime pay, spread of hours premium, and also alleged
that all employees were victims of this common policy in violation of the FLSA).  "A declaration
or affidavit that is 'self-focused' and fails to describe the experiences of other employees does
not make out the modest showing required for conditional certification." *Murray v. City of New
York, N.Y.*, No. 16-cv-8072 (PKC), 2017 WL 3531552, at \*6 (S.D.N.Y. Aug. 16, 2017).  Here,
the pleadings and Aguilo's declaration set forth observations and conversations between Aguilo
and other similarly situated employees who indicated they were not paid the statutory minimum
wage, overtime or spread-of-hours premiums, nor did they receive proper wage notices. (Aguilo
Decl. ¶¶ 16-17; Docket No. 1 ¶¶ 54-68).

Defendants also cite to *Shanfa Li v. Chinatown Take-Out Inc.*, No. 16 Civ. 7787 (JCM), 2018 WL 1027161 (S.D.N.Y. Feb. 21, 2018), in support of their argument that Aguilo's declaration fails to meet "the 'substantial allegations' standard required by this court as outlined … in *Shanfa Li*." (Docket No. 37 at 18).  This Court, however, did not set forth a new "substantial allegations" standard in *Shanfa Li*, but rather declined to conditionally certify a proposed collective where the primary allegation concerning the underpayment of other employees was premised on a conversation with a supervisor who "did not tell [the plaintiff] what other employees made, but said that he had received complaints from other people [regarding underpayment]." 2018 WL 1077161, at *4.  This Court found that "the existence of complaints from 'other employees' regarding pay does not suggest that Plaintiffs and all of Defendants' non-managerial employees together were victims of a common policy or plan that violated the law," and specifically highlighted that the plaintiffs in *Shanfa Li* "fail[ed] to allege that they observed other non-managerial employees working similar hours or receiving similar treatment." *Id.* (internal quotations omitted).  However, Aguilo has sufficiently alleged that she and other employees serving in similar roles were victims of a common policy that violated the law, rendering *Shanfa Li* inapposite.

Nevertheless, the Court finds that conditional certification of all non-managerial employees would be overly broad, (Docket No. 37 at 18-19), and thus limits the collective to individuals who served as pressers, folders, and laundry employees during the relevant period. Plaintiff does not explicitly reference the roles or titles encompassed in a proposed collective of all "non-management employees," but she does set forth her own duties and those of some of the employees she claims to have spoken with and observed. (Aguilo Decl. ¶¶ 1-4, 16).  Defendant Massimi states in his declaration that he "generally employ[s] two types of workers in [his]

business, 'store clerks' who work in the retail stores and 'pressers and folders' who work in the plant location." (Massimi Decl. ¶ 9).  Massimi explains that employees at the retail locations primarily engage in client interactions, customer service, and handle payments, whereas the duties of workers at the plant consist predominantly of "pressing the garments as well as stain removal and laundering of the garments." (*Id.*).  Aguilo maintains that she worked the majority of her time at the Vails Gate Processing Center and that her duties primarily consisted of the "'finisher' steps of the laundry process." (Aguilo Decl. ¶¶ 2-3).  She further asserts that her duties were similar "with some minor variations" when she worked at the retail locations. (*Id.* ¶ 4).  In her motion, Aguilo describes herself as a "former laundry employee who performed ironing and folding duties." (Docket No. 34 at 7).  Aguilo does not assert that she performed any duties that would fall under the "store clerk" title, either as defined by Massimi or as understood by the Court. (*Id.*, *generally*; *see also* Aguilo Decl., *generally*).  While Aguilo characterizes herself only as a "laundry employee," (Docket No. 34 at 7), the Court can infer from the description of her duties that she served as a presser, folder or laundry employee during the relevant period. (Aguilo Decl. ¶¶ 2-4).  Moreover, three of the employees Aguilo lists in her declaration, Bethania, Giovanny and Carmen, performed duties akin to those performed by Aguilo, and thus can be similarly categorized as either pressers, folders or laundry employees. (*Compare* Aguilo Decl. ¶¶ 2-4 *with* ¶ 16).

However, Plaintiff seeks to conditionally certify a class "of all non-management employees" at four of Defendants' locations. (Docket No. 34 at 6-7).  This would encompass non-managerial employees other than those who served as pressers, folders or laundry employees, such as "store clerks" as well as other individuals listed in Aguilo's declaration who performed janitorial, general services and delivery services. (Aguilo Decl. ¶ 16; Massimi Decl. ¶

9).  Aguilo asserts that Defendants' unlawful policies "applied to all of Defendants' non-exempt, non-management employees at the different locations of Vails Gate Cleaners where [she] was assigned to work," (Aguilo Decl. ¶ 16), and alleges in the Complaint that these unlawful policies were applied to both Plaintiff and the members of the collective, (Docket No. 1 ¶¶ 59, 61-68). However, other than referencing conversations with or observations of two employees that performed different duties than she did, (Juan, a janitor and general service employee, and Guillermo, a delivery employee), Aguilo's declaration fails to provide specific factual allegations concerning the hours, schedules, wages, and working conditions of these other non-management employees or of those that served in store clerk roles. (Aguilo Decl. ¶¶ 16-17).  While the Court can "fairly infer" that individuals serving in roles similar to Aguilo (i.e. performing pressing, folding and laundry duties) worked similar shifts and hours, and "thereby suffer[ed] the same violations of the FLSA," *She Jian Guo v. Tommy's Sushi Inc.*, No. 14 Civ. 3964 (PAE), 2014 WL 5314822, at *3 (S.D.N.Y. Oct. 14, 2016), the Court is unable to draw the same inference for the other non-managerial employees who served as store clerks, janitors, general service employees, or delivery persons. *See, e.g.*, *Campos v. Lenmar Rest. Inc.*, 18 Civ. 12359 (KPF), 2019 WL 6210814, at *4 (S.D.N.Y. Nov. 21, 2019) (granting conditional certification for collective of bussers and servers based on details gleaned from plaintiff's "own experience or from conversations with specifically named employees," but denying certification of a larger group because plaintiff was "unable to provide any non-conclusory allegations about the conditions that other non-managerial employees experienced"); *Fernandez v. Sharp Mgmt. Corp.*, 16-CV-0551 (JGK)(SN), 2016 WL 5940918, at *3 (S.D.N.Y. Oct. 13, 2016) (granting conditional certification for all superintendents, but denying certification of a broader collective of all resident managers, assistance maintenance personnel, security staff, janitors, porters and

"'any other similar job titles'" where the plaintiffs failed to provide specific details sufficient for the court to "extend conditional certification beyond [plaintiffs'] own job title"); *Garcia*, 102 F. Supp. 3d at 550 (granting conditional certification, but limiting the collective to those employees who were described with sufficient specificity in plaintiffs' declarations to demonstrate that they were similarly situated); *She Jian Guo*, 2014 WL 5314822, at *3–4 (granting conditional certification for a collective of deliverymen, but denying certification as to all non-managerial employees, where the named plaintiff – a deliveryman – failed to provide more than vague and conclusory allegations concerning the wages and hours of other employees); *Sanchez*, 2014 WL 465542, at *2 (denying conditional certification where plaintiff only offered a single declaration alleging that he was denied overtime and not paid the minimum wage and, while he listed the first names of other employees, simply stated that they were all common victims based on undetailed "observations" and "conversations").

Accordingly, the Court grants conditional certification as to all individuals who served as pressers, folders and laundry employees[7] at the four locations listed in Plaintiff's motion during the relevant time period, but declines to certify a broader collective of all non-managerial employees.

## C. The Proposed Notice

Plaintiff seeks approval of notice and consent forms and a reminder notice, (Docket Nos. 33-3 to 33-5, 34 at 14-18), and Defendants oppose the proposed six-year notice period and present several arguments concerning the content of the forms, (Docket No. 37 at 18-27).

---

[7] Given that Plaintiff does not set forth specific job titles under the non-managerial umbrella, and Massimi's declaration divides employees into "store clerks" and "pressers and folders," the Court adopts the "presser and folder" titles, in part, but adds "laundry employee" because Massimi's own definition encompasses more than just employees who "press" or "fold" garments. (Massimi Decl. ¶ 9). Further, Plaintiff identifies herself as a "laundry employee," (Docket No. 34 at 7), and many of the duties both she and other similarly situated employees engaged in include more than just "pressing" or "folding," and can be best identified generally as "laundry" work. (Aguilo Decl. ¶¶ 2-4, 16).

**1.  The Notice Period**

Plaintiff argues that "the Notice should be sent to all putative plaintiffs who worked for Defendants during the six years preceding the filing of the Complaint" because "Plaintiff asserts NYLL claims identical to her FLSA claims," (Docket No. 34 at 16), and thus the longer notice period would "best serve the interests [of] judicial economy," (Docket No. 40 at 11).  Defendants oppose, arguing that the notice period should be limited to three years. (Docket No. 37 at 20-21). The statute of limitations for FLSA claims is, at most, three years, *see* 29 U.S.C. § 255(a), whereas the NYLL provides for a longer six-year period, *see* N.Y. Labor Law § 198(3). "Courts in this Circuit have approved both three–and six-year notice periods, depending on the facts." *Trinidad v. Pret A Manger (USA) Ltd.*, 962 F. Supp. 2d 545, 563 (S.D.N.Y. 2013) (collecting cases).  Courts decline to approve the longer six-year period where "[i]t would be confusing to employees who are ineligible for the FLSA opt-in class to receive the opt-in notice, which does not relate to any state law claims." *Hamadou v. Hess Corp.*, 915 F. Supp. 2d 651, 668 (S.D.N.Y. 2013); *see also Campos*, 2019 WL 6210814, at *5 (denying a request to approve a six-year period because sending notices to plaintiffs "who may not have a claim under the FLSA would serve only to confuse employees, rather than 'promote judicial efficiency' as Plaintiff claims") (collecting cases).  The Court here is not persuaded by Plaintiff's argument and concludes that approving the longer six-year period would likely result in confusion and would not promote judicial efficiency.  Moreover, courts have declined to approve the longer six-year notice period where plaintiffs moved only to certify an FLSA opt-in class, as is the case here, and not for class certification under Rule 23. *See, e.g.*, *Garcia*, 102 F. Supp. 3d at 551 (limiting notice period to three years where the case included FLSA and NYLL claims but "no New York state class action ha[d] been certified"); *Trinidad*, 962 F. Supp. 2d at 564 (declining to authorize a six-year notice

period in case involving both FLSA and NYLL claims where the plaintiffs only sought to certify the FLSA collective and did not move for Rule 23 class certification).  Consequently, the notice period shall be limited to three years.

## 2.  The Content of the Notice

"'Upon authorizing the distribution of notice to potential opt-in plaintiffs, the district court maintains 'broad discretion' over the form and content of the notice.'" *Contrera v. Langer*, 278 F. Supp. 3d 702, 721 (S.D.N.Y. 2017) (quoting *Martin v. Sprint/United Mgmt. Co.*, 15 Civ. 5237 (PAE), 2016 WL 30334, at *15 (S.D.N.Y. Jan. 4, 2016)); *see also Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 202 (S.D.N.Y. 2006) ("[T]he Supreme Court has noted that the 'details' of notice should be left to the broad discretion of the trial court.").  "The overarching policies of the FLSA's collective suit provisions require that the proposed notice provide 'accurate and timely notice concerning the pendency of the collective action, so that [potential plaintiffs] can make informed decisions about whether to participate.'" *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445, 450 (S.D.N.Y. 2011) (quoting *Fasanelli v. Heartland Brewery, Inc.*, 516 F. Supp. 2d 317, 323 (S.D.N.Y.2007)).

Before addressing the parties' respective arguments concerning the forms, the Court notes that aspects of the notice must be changed to conform to this decision limiting the class. First, Plaintiff must replace "non-management employees" in the notice or consent form with the titles of "pressers, folders, and laundry employees." (Docket No. 33-3).  Second, Plaintiff must change the commencement of the notice period from September 27, 2012 to September 27, 2015, reflecting the Court's decision to limit the notice period to three years. (*Id.*).

Defendants first argue that the "From Paragraph" and "Questions" footer should be eliminated because "[t]o the layperson, it appears as an advertisement for 'Pelton Graham

LLC,'" and "[i]t should not be Defendants' obligation to perform marketing services for Plaintiff's counsel." (Docket No. 37 at 21-22; *see also* Docket No. 33-3).  Plaintiff responds that the language in the notice is commonplace and removing it "could result in confusion and unintentional phone calls by putative plaintiffs to Defendants' counsel." (Docket No. 40 at 12).  The Court agrees with Defendants regarding the "Questions?" footer but not the "From" paragraph.  Courts in this Circuit have ordered plaintiffs to remove similar "questions" language from notices. *See, e.g.*, *Castillo v. Perfume Worldwide Inc.*, CV 17-2972 (JS)(AKT), 2018 WL 1581975, at *9–10 (E.D.N.Y. Mar. 30, 2018) (rejecting a notice where at the bottom of each page, it contained the message "Questions? Contact Nadia Estrada"); *Tanski v. Avalonbay Cmtys., Inc.*, CV 15-6260 (AKT), 2017 WL 10858910, at *18 (E.D.N.Y. Mar. 31, 2017) (ordering plaintiffs to "remove the language 'For Questions, Please Contact Frank Schirripa' from the bottom of each page" of the notice).  Moreover, the Court finds that removing the "Questions?" footer will not impede the prospective plaintiffs' ability to contact Plaintiff's counsel, nor will it result in any confusion.  However, the Court finds that the "From" paragraph on the first page of the notice is permissible. (Docket No. 33-3).  The information contained therein is not misleading or confusing, and does not serve as advertisement for Plaintiff's counsel since the notice specifically states that any prospective plaintiff can retain other counsel. *See Kemper v. Westbury Operating Corp.*, No. 12-CV-0895 (ADS)(ETB), 2012 WL 4976122, at *7 (E.D.N.Y. Oct. 17, 2012) (rejecting defendants' objection to the inclusion of plaintiffs' website on the notice because it constituted attorney advertisement, noting that the information was not misleading and that the notice otherwise provided that the potential plaintiff could retain other counsel).  Accordingly, Plaintiff must remove the "Questions? Please call Pelton Graham at 212-

385-9700" language from the bottom of each page of the proposed notice, but the "From"
paragraph on the first page may remain.

Defendants request that the notice "alert recipients to their own potential involvement in
the action, including a statement that, if they join the lawsuit, they may be required to provide
documents, answer to interrogatories, sit for a deposition, or testify in Court." (Docket No. 37 at
22).  Plaintiff does not object to this request and proposes adding the following language: "In
addition, if you join this lawsuit, you may be asked to give testimony and information about your
work for Defendants, to help the Court decide whether you are owed any money." (Docket No.
40 at 12).  The Court agrees that this type of language should be added to the notice, but the
language proposed by Plaintiff is not sufficiently specific.  Accordingly, Plaintiff must modify
the notice to inform plaintiffs that, if they opt into the lawsuit, they may be asked to (1) appear
for depositions; (2) respond to written discovery; (3) testify at trial; and (4) pay litigation costs.
This reflects the balance typically struck by courts in this District. *See, e.g.*, *Bah v. Shoe Mania,
Inc.*, No. 08 Civ. 9380 (LTS)(AJP), 2009 WL 1357223, at *4 (S.D.N.Y. May 13, 2009) (ordering
plaintiff to modify the notice to add similar language).

Defendants further argue that the Court should not permit the posting of the notice at
retail locations "where customers would be able to see that there is a pending lawsuit," and limit
posting to Defendants' plant location. (Docket No. 37 at 23).  Plaintiff responds that she "did not
request that Notice be posted in public places," but that courts often order the posting of notices
at Defendants' places of business. (Docket No. 40 at 14).  "Courts routinely approve requests to
post notice on employee bulletin boards and in other common areas." *Whitehorn*, 767 F. Supp.
2d at 449 (rejecting defendants' argument that postings "would unnecessarily disturb their
business" and approving such postings).  "Posting notice in the workplace maximizes potential

plaintiffs' opportunities to be informed of the pendency of the litigation and consider whether to opt in." *Mendoza v. Ashiya Sushi 5, Inc.*, No. 12 Civ. 8629 (KPF), 2013 WL 5211839, at *9 (S.D.N.Y. Sept. 13, 2013).  Since Defendants primarily take issue with the posting of notices in public areas, and Plaintiff acknowledges that she never envisioned doing so, the Court rejects Defendants request to only post the notice at their plant location, and "authorizes posting of the notice and opt-in form in a common, non-public employee space" at the four locations requested by Plaintiff "where they will be easily visible to employees." *Yap v. Mooncake Foods, Inc.*, 146 F. Supp. 3d 552, 567 (S.D.N.Y. 2015) (quotations omitted).

Defendants also argue that the opt-in plaintiffs should have the option of hiring their own attorney, and that Paragraph III of the notice should reflect such an option. (Docket No. 37 at 23-24).  Paragraph III already includes such language. (Docket No. 33-3 at 2).  However, the "Consent to Become a Party Plaintiff" form does not contain a similar provision. (Docket No. 33-4).  Accordingly, Plaintiff should revise the consent form to make clear that prospective plaintiffs are free to retain other counsel or proceed *pro se*. *See Argudo v. Parea Grp. LLC*, 18-CV-0678 (JMF), 2019 WL 4640058, at *5 (S.D.N.Y. Sept. 24, 2019) (directing the plaintiffs to revise the consent to join form to better reflect this option); *see also Islam v. LX Ave. Bagels, Inc.*, 18 Civ. 04895 (RA)(RWL), 2019 WL 5198667, at *10 (S.D.N.Y. Sept. 30, 2019) (approving a "Consent To Join Form" where it "clearly provide[d] the option for a plaintiff to choose another lawyer or to participate without a lawyer.").

Furthermore, Defendants assert that the completed consent forms should be returned to the Clerk of the Court. (Docket No. 37 at 24).  Courts in this Circuit are split on whether it is appropriate to have the putative plaintiffs mail notices to the Clerk of the Court or plaintiffs' counsel. *See Slamna v. API Rest. Corp.*, No. 12 Civ. 757 (RWS), 2013 WL 3340290, at *5

(S.D.N.Y. July 2, 2013).  "The majority of courts, however, have directed opt-in plaintiffs to mail the consent form to plaintiffs' counsel." *Martin*, 2016 WL 30334, at *18 (collecting cases). The Court is inclined to follow this majority approach, especially given that the notice advises opt-in plaintiffs of their ability to select other counsel to represent them. *See Keawsri v. Ramen-Ya Inc.*, 17-CV-2406 (VEC), 2018 WL 279756, at *7 (S.D.N.Y. Jan. 2, 2018) ("Furthermore, the Notice properly instructs prospective plaintiffs to return the forms to Plaintiffs' lawyers; courts in this District permit this practice when the notice informs prospective plaintiffs that they may retain their own counsel, which the Prospective Notice does"); *see also Martin*, 2016 WL 30334, at *18 ("Because the revised Notice will clarify that opt-in plaintiffs may retain their own attorneys, there is no reason to depart from the majority approach here") (citing *Delaney v. Geisha NYC, LLC*, 261 F.R.D. 55, 60 (S.D.N.Y. 2009)).  Since the notice explicitly indicates that the opt-in plaintiffs may retain their own counsel, (Docket No. 33-3 at 2), the Court finds no issue with having the completed forms returned to Plaintiff's counsel.

Defendants' counsel also proposes that, in addition to Defendants' counsel's name, firm, address, and telephone number, the notice should include in the "Counsel For Defendants" paragraph the following language: "[s]hould you have any questions regarding this lawsuit, you may reach Defendants' counsel Anthony Portesy, Esq…" (Docket No. 37 at 24).  "Courts regularly permit inclusion of defense counsel's contact information on such notices." *Escano v. N & A Produce and Grocery Corp*, No. 14-cv-4239 (PAC), 2015 WL 1069384, at *2 (S.D.N.Y. Mar. 11, 2015); *see also Slamna*, 2013 WL 3340290, at *5 (granting defendants' request to include the "name, address, and telephone number of Defendants' counsel," and noting that "Courts in this Circuit have generally concluded that such information is appropriate for inclusion in a notice of collective action.").  As written, the proposed notice includes all

information typically approved by courts. (Docket No. 33-3).  However, the telephone number

provided for Defendants' counsel is his fax number not his telephone number. (*Id.*).

Accordingly, the Court directs Plaintiff to correct the telephone number for Defendants' counsel,

but otherwise approves the proposed language in Paragraph VIII.

Defendants further argue that the immigration language in Paragraph IX of the proposed

notice is unnecessary and, in the alternative, ask the Court to strike the sentence in Paragraph IX

informing potential plaintiffs that they do "not need[] to have a record of the hours you worked

in order to participate in the lawsuit." (Docket No. 37 at 25; *see also* Docket No. 33-3 at 4).  It is

well established that notices may include statements advising potential plaintiffs that they have a

right to participate in the lawsuit regardless of immigration status. *See, e.g.*, *Keawsri*, 2018 WL

279756, at *7 (approving language in notice referencing immigration status and anti-retaliation

laws); *Gomez v. Terri Vegetarian LLC*, 17-CV-213 (JMF), 2017 WL 2628880, at *3 (S.D.N.Y.

June 16, 2017) (granting conditional certification, but ordering that the proposed notice "be

modified to advise recipients that their immigration status does not affect their entitlement to

recover back wages or to participate in the lawsuit…"); *Sanchez v. El Rancho Sports Bar Corp.*,

No. 13 Civ. 5119 (RA), 2014 WL 1998236, at *4 (S.D.N.Y. May 13, 2014) (approving language

in notice regarding immigration status).  Thus, the first sentence in Paragraph IX is

unquestionably permissible and the Court rejects Defendants' assertion that "[t]he parties gain

nothing from its inclusion." (Docket No. 37 at 25).[8]  While the second sentence does not relate to

---

[8] The Court notes that Defendants' assertion that the prevailing law concerning immigration status is so ubiquitous that its inclusion would be of no utility is erroneous. (Docket No. 37 at 25).  Rather, it is precisely because the law does not discriminate based on immigration status that it is imperative to advise prospective plaintiffs of that fact so as to not deter them from opting into the action. *See, e.g.*, *Castillo*, 2018 WL 1581975, at *13 ("Courts regularly permit notices to include a statement informing the recipients that immigration status is irrelevant to their right to recover under the FLSA.").

immigration status, Defendants cite to no authority barring its inclusion, and the Court finds that it is not objectionable. Accordingly, the Court approves Paragraph IX as written.

Relatedly, Defendants object to the anti-retaliation language in Paragraph VI because "there is no evidence of retaliation." (Docket No. 37 at 24-25). However, courts have rejected similar arguments. *See, e.g.*, *Bittencourt v. Ferrara Bakery & Cafe Inc.*, 310 F.R.D. 106, 118 (S.D.N.Y. 2015) (rejecting defendants' request to strike anti-retaliation language because "there [was] no evidence of retaliation," and affirming the appropriateness of a "statement concerning the prohibition on retaliation"); *Cohan v. Columbia Sussex Mgmt., LLC*, No. CV 12-3203 (JS)(AKT), 2013 WL 8367807, at *13 (E.D.N.Y. Sept. 19, 2013) (approving similar anti-retaliation language and noting that "[s]ome notification of the potential Plaintiffs' rights to be free from retaliation is appropriate" and routinely approved). Accordingly, the Court denies Defendants' request to strike the anti-retaliation language, and approves Paragraph VI as written.

Defendants further argue that the 60-day opt-in period requested by Plaintiff should be reduced to 45 days. (Docket No. 37 at 25-26). However, courts in this Circuit routinely approve 60-day opt-in periods. *See, e.g.*, *Whitehorn*, 767 F. Supp. 2d at 451–52 (reducing opt-in period from 90 to 60 days, "which is more consistent with FLSA practice") (collecting cases). Thus, Plaintiff is not required, as Defendants insist, to "identif[y] circumstances that would require an extended period beyond forty five (45) days." (Docket No. 37 at 26). Moreover, Defendants cite no authority for the proposition that the typical opt-in period approved by courts in this Circuit is 45 days, let alone any case where a court reduced an opt-in period from 60 to 45 days. (*Id.*). Accordingly, the Court approves the 60-day opt-in period.

Defendants also contend that Plaintiff is improperly using the consent form "as a discovery device" because in addition to including spaces for potential opt-in Plaintiffs' names,

addresses, signatures, and telephone numbers, they also include spaces for e-mail addresses and approximate start and end dates of employment. (Docket No. 37 at 26-27; *see also* Docket No. 33-4). Plaintiff responds that this information is "not 'discovery' but simply permits all parties to more quickly determine the dates of their potential claims … is helpful to all parties and should be included." (Docket No. 40 at 13). Neither party cites any authority for their respective positions. (Docket Nos. 37 at 26-27, 40 at 13-14). However, similar language has been implicitly approved. *See, e.g.*, *Zhongle Chen v. Kicho Corp.*, 18 CV 7413 (PHM)(LMS), 2020 WL 1900582, at *16 (S.D.N.Y. Apr. 17, 2020) (where the court, in approving the proposed consent form, directed the plaintiff to add following "Start Date" and "End Date" the phrase "at Kicho Japanese Fusion"). Furthermore, Defendants provide no reasoned argument against including spaces for dates of employment. Accordingly, the Court rejects Defendants' request to strike the spaces for employment dates from the consent form.

**D.  The Reminder Notice and Plaintiff's Request for Discovery**

Defendants argue that Plaintiff's request to send a reminder notice is unnecessary and would give Plaintiff a "second bite at the apple." (Docket No. 37 at 27-28). "[M]any courts in this district have permitted sending a reminder notice." *Knox v. John Varvatos Enters. Inc.*, 282 F. Supp. 3d 644, 667 (S.D.N.Y. 2017) (citing *Racey v. Jay-Jay Cabaret, Inc.*, 15 Civ. 8228 (KPF), 2016 WL 3020933, at *11 (S.D.N.Y. May 23, 2016) (collecting cases)). However, there does appear to be a split among courts outside of this Circuit. *See Guzelgurgenli v. Prime Time Specials, Inc.*, 883 F. Supp. 2d 340, 357–58 (E.D.N.Y. 2012) (detailing this split). Nevertheless, given the consensus among courts in this District, the Court will permit Plaintiff to send a reminder notice 21 days before the opt-in deadline. *See Diaz v. N.Y. Paving Inc.*, 340 F. Supp. 3d

372, 387 (S.D.N.Y. 2018) (allowing plaintiffs to send a reminder notice and explaining that the prevailing practice in the district since *Guzelgurgenli* permits the sending of reminder notices).

Finally, Defendants argue that Plaintiff is not entitled to "inherently private information" from potential plaintiffs, namely, cellphone numbers. (Docket No. 37 at 28).  Plaintiff responds that discovery of such information is appropriate. (Docket No. 40 at 13).  "After granting conditional approval, a court may order an employer to produce information 'essential to identifying potential opt-in plaintiffs…'" *Diaz*, 340 F. Supp. 3d at 387 (quoting *In re Penthouse Exec. Club Comp. Litig.*, No. 10 Civ. 1145 (NRB), 2010 WL 4340255, at *5 (S.D.N.Y. Oct. 27, 2010)).  Despite Defendants' characterization of telephone numbers as "inherently private," courts in this District "commonly grant requests for the production of names, mailing addresses, email addresses, *telephone numbers*, and dates of employment in connection with the conditional certification of a FLSA collective action." *Martin*, 2016 WL 30334, at *19 (emphasis added). Furthermore, courts in this District have routinely directed defendants to produce telephone numbers, as well as other modes of communication, such as social media. *See, e.g.*, *Qiang Lu v. Purple Sushi Inc.*, __ F. Supp. 3d __, 2020 WL 1303572, at *5 (S.D.N.Y. Mar. 19, 2020) (granting plaintiffs' request for telephone numbers, e-mail addresses, as well as social media information); *Jian Wu v. Sushi Nomado of Manhattan, Inc.*, 17cv04661 (PGG)(DF), 2019 WL 3759126, at *12 (S.D.N.Y. July 25, 2019) (ordering the production of, *inter alia*, telephone numbers and e-mail addresses, and noting that "Courts in this District commonly grant requests for the production of such information") (internal quotations omitted); *see also In re Penthouse Exec. Club Comp. Litig.*, 2010 WL 4340255, at *5 (denying plaintiffs' request for social security numbers or home addresses, but permitting the discovery of telephone numbers).  Accordingly,

the Court grants Plaintiff's request for the production of names, addresses, and telephone numbers of the potential opt-in plaintiffs.

## III. CONCLUSION

For the foregoing reasons, Plaintiff's motion for conditional certification is granted in part and denied in part. The Court conditionally certifies a collective of all pressers, folders and laundry employees who worked at any of the following four locations since September 27, 2015: (1) Vails Gate Processing Center at 41 Wisner Avenue, Newburgh, New York 12550; (2) Vails Gate Cleaners at 115 Temple Hill Rd, New Windsor, New York 12553; (3) Vails Gate Cleaners at 547 Route 32, Highland Mills, New York 10930; and (4) Tailorland Newburgh located at 21 Route 17K, Newburgh, New York 12550.

The Court, however, denies without prejudice Plaintiff's motion to certify a broader collective of all non-managerial employees. Plaintiff is directed to revise the notice and consent forms consistent with this Opinion, after which Plaintiff and Defendants shall meet and confer prior to submitting the final versions to the Court for approval by July 14, 2020. Defendants are further directed to provide Plaintiff's counsel with the names, addresses, telephone numbers, and e-mail addresses for all potential opt-in plaintiffs no later than July 14, 2020.

The Clerk is respectfully requested to terminate the pending motion (Docket No. 32).

Dated:   June 30, 2020
         White Plains, New York

SO ORDERED:

JUDITH C. McCARTHY
United States Magistrate Judge