**PELTON GRAHAM** LLC

ADVOCATES FOR JUSTICE

January 26, 2021

Taylor B. Graham, Esq.
Graham@PeltonGraham.com

**VIA CM/ECF**

Hon. Judith C. McCarthy
United States Magistrate Judge
The Hon. Charles L. Brieant Jr.
Federal Building and United States Courthouse
300 Quarropas St.
White Plains, NY 10601-4150

   Re: *Aguilo v. Vails Gate Cleaners Inc., et al.*
     **Civil Action No. 7:18-cv-08850 (JCM)**

Dear Judge McCarthy:

  We represent named plaintiff Mireay Aguilo ("Aguilo" or the "Named Plaintiff") and opt-in plaintiff Caitlyn Imperial-Rogers ("Imperial-Rogers" or the "Opt-in Plaintiff" and, together with Aguilo, the "Plaintiffs") with respect to their claims for unpaid minimum wages, unpaid overtime and spread-of-hours premiums, and for failure to provide proper wage notices and wage statements against Vails Gate Cleaners Inc., Exit 9, LLC, and Richard Massimi (collectively, the "Defendants"). We write, on behalf of all parties, seeking the Court's approval of the parties' settlement, pursuant to the Fair Labor Standards Act ("FLSA") and the Second Circuit's decision in *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015). The Parties believe that the Settlement Agreement and Wage and Hour Release ("Settlement Agreement") attached as Exhibit A to the Affidavit of Taylor B. Graham in Support of Plaintiffs' Motion for Approval of FLSA Settlement (hereinafter "Graham Affidavit"), constitutes a fair and reasonable compromise of this matter, which should be approved by the Court.

**I. Procedural History and Plaintiffs' Allegations**

  The Named Plaintiff commenced this action by filing a Class & Collective Action Complaint in the Southern District of New York on September 27, 2018 against Defendants. (Dkt. No. 1). Defendants filed their Answer on December 3, 2018, denying all material allegations. (Dkt. No. 17). On April 4, 2019, the Named Plaintiff filed a pre-motion letter in advance of her anticipated Motion for Conditional Certification of an FLSA Collective Action ("FLSA Collective Action Motion") (Dkt. No. 18), which Defendants' opposed on April 10, 2019. (Dkt. No. 19). After two (2) follow-up letters to the Court (Dkt. Nos. 20, 23), the Court ultimately held an initial/pre-motion conference on January 20, 2020 wherein a discovery schedule was set and Plaintiff's FLSA Collective Action Motion was referred to Magistrate Judge McCarthy. (See Dkt. Entry Dated 01/30/20). Plaintiff's counsel filed the FLSA Collective Action Motion on March 16, 2020 (Dkt. Nos. 32-34), which was fully-briefed as of May 8, 2020. (Dkt. No. 40).  Judge

**New York**: 111 Broadway, Suite 1503, New York, NY 10006  Tel. 212-385-9700  Fax 212-385-0800
**San Francisco**: 456 Montgomery Street, 18th Fl., San Francisco, CA 94104  Tel. 415-437-9100  Fax 212-385-0800

www.PeltonGraham.com

McCarthy issued an Opinion and Order granting in part and denying in part Plaintiff's FLSA Collective Action Motion and authorizing notice to be issued to all pressers, folders and laundry employees who worked at any of four (4) locations of Defendants' dry-cleaning business since September 27, 2015. (*See* Dkt. No. 41). After submitting revised versions of the Collective Action Notice materials (Dkt. No. 43) and a dispute between the parties regarding the individuals to be included in the list of potential plaintiffs, Defendants ultimately provided Plaintiff's counsel with a list of thirty-four (34) potential plaintiffs. Plaintiff's counsel mailed the Collective Action Notice and Consent to Become a Party Plaintiff form to the potential plaintiffs on August 3, 2020 and the Deadline Reminder Notice on September 2, 2020. Opt-in Plaintiff Imperial-Rogers exercised her right to join the action by filing her Consent to Become a Party Plaintiff form with the Court on October 2, 2020. (Dkt. No. 48).

The Parties exchanged written discovery in the form of interrogatories and requests for production of documents, as well as requests for admissions from the Defendants. Plaintiff Aguilo produced dozens of paychecks, timesheets and time cards reflecting the hours worked and wages received from Defendants in both check and cash, and Defendants produced the records of paychecks issued to Plaintiffs, as well as certain wage notices. After the exchange of written discovery, the parties agreed to attempt resolution of the action on behalf of the Plaintiffs. To that end, Plaintiffs' counsel created a damages computation utilizing the documents produced by Defendants and the Plaintiffs' best recollection as to their hours worked and wages received, where Defendants' records did not reflect such information.

On November 5, 2020, the Parties sought an extension of the discovery deadlines and referral to the SDNY Mediation Program. (Dkt. No. 52). Judge McCarthy referred to matter to the SDNY Mediation Program on November 9, 2020. (Dkt. No. 53).

The Parties participated in a formal mediation session before Chaim Book, Esq. (the "Mediator") on December 21, 2020 via Zoom. During the mediation, Defendants exchanged relevant information including, but not limited to, Plaintiff Aguilo's timeclock records and Defendants' financial records. With the assistance of the Mediator, the Parties ultimately were able to negotiate a settlement in principle of the action on behalf of the Plaintiffs and informed the Court on January 5, 2021 that the Parties were working to finalize a settlement with their respective clients. (Dkt. No. 55). Over the next few days, the Parties reached a final agreement on all terms, which was memorialized in the attached Settlement Agreement (Ex. A)[2].

## II.     The Settlement Accounts for Litigation Risk

Although the Parties hold significantly different viewpoints on the underlying facts of this matter and Defendants' potential liability, the parties have agreed to a settlement amount of **$65,000.00** for the Plaintiffs, inclusive of attorney's fees and costs.

---

[2] Unless otherwise stated, all exhibits are attached to the Graham Affidavit, filed contemporaneously herewith.

Honorable Judith C. McCarthy
Plaintiffs' Letter Regarding Fairness of FLSA Settlement
Page **3** of **7**

It is Plaintiffs' position that, throughout their respective employment periods, Defendants did not pay Plaintiffs the proper minimum wages or overtime premiums to which they were entitled for their work. Specifically, for their work, Plaintiffs claim that they were paid for only approximately thirty-five (35) hours per week via check at minimum wage, with the remaining hours, including those in excess of forty (40), paid in cash at straight-time rates or lower rates that were less than minimum wage. In addition, for a portion of her employment period, Plaintiff Aguilo was paid her wages entirely in cash at straight-time rates lower than the applicable minimum wage. Defendants deny that they paid any employees below minimum wage and deny that Plaintiffs worked significant overtime hours, and contend that the Plaintiffs were paid appropriately for all hours that they worked. Plaintiffs also alleged that they were paid their wages either entirely in cash or through a combination of cash and check, without a proper paystub. Defendants allege that the paystubs which accompanied the payroll checks issued to Plaintiffs satisfy the NYLL wage statement requirements.

Perhaps more significant to the ultimate resolution of this matter, however, was the Defendants' financial condition as a result of the COVID-19 pandemic. Specifically, the dry-cleaning industry has been substantially impacted by the pandemic's shift to remote work and Defendants' business has been further impacted by the lack of summer camps and corporate accounts operating in the area of Defendants' locations. During the mediation, Defendants exchanged confidential financial information to Plaintiffs' counsel, demonstrating the loss of revenues from the pandemic to date and anticipated to continue into the foreseeable future. Plaintiffs are aware that Defendant Massimi has other businesses and personal assets but recognize the impact that the pandemic has had on Defendants' business and took that into consideration in determining a fair and reasonable resolution of this matter at mediation.

Notwithstanding the above disputes, in furtherance of the mediation, Plaintiffs' counsel calculated individualized damages for Plaintiffs based on Plaintiffs' best estimates of the hours worked throughout their employment periods, and the wages they received from Defendants for such work. (Exhibit B). Plaintiffs' damages analysis resulted in a total of approximately $119,812.10 for Plaintiff Aguilo, including: $14,337.31 in unpaid minimum wages, $19,935.71 in unpaid overtime damages, $11,075.39 in unpaid spread-of-hours premiums, plus an equal amount in liquidated damages ($45,348.41), $5,000 for wage notice violations, $5,000 for wage statement violations, and pre-judgment interest in the amount of $19,115.29, and a total of approximately $24,936.74 for Opt-in Plaintiff Imperial-Rogers, including: $124.86 in unpaid minimum wages, $4,126.24 in unpaid overtime premiums, $2,292.36 in unpaid spread-of-hours premiums, $6,543.46 in liquidated damages, $5,000 for wage notice violations, $5,000 for wage statement violations, and $1,849.83 in pre-judgment interest. (*See id.*). It bears noting that Defendants produced LS-54 documents as well as pay stubs that Defendants believed would eliminate $20,000 in liability for those damages under Plaintiff's analysis. Further to those ends, Defendants payroll records indicated that there existed as substantial issue of fact for a jury as to whether Plaintiffs, particularly, Opt-in Plaintiff Imperial-Rogers worked any hours in excess of forty (40) hours whatsoever.

Honorable Judith C. McCarthy
Plaintiffs' Letter Regarding Fairness of FLSA Settlement
Page **4** of **7**

Notwithstanding, although there is a possibility that Plaintiffs could recover higher damages if the case proceeded to trial, there is also the possibility that they could receive a lesser amount, or no damages at all. Throughout the mediation process, Defendants have reiterated that Defendants' business has been negatively impacted by the COVID-19 pandemic, which has resulted in Defendants being faced with a dire financial situation. As such, rather than move forward with lengthy and costly litigation and potentially recover a judgment that may later be impossible to collect, Plaintiffs prefer to settle now, on an individual basis, for an amount that they would be guaranteed to receive under the terms of the settlement. The parties believe this is a fair recovery given the risks associated with proceeding to trial and Defendants' ability to pay which was likely worsened due to the continued ramifications of the pandemic, and indeed was a substantial factor in proceeding with negotiations as opposed to deposition discovery and motion practice.

### III. Settlement Terms

As set forth in the attached Settlement Agreement, the parties have agreed to settle this action for a total settlement amount of **$65,000.00** (the "Settlement Amount"). Of that amount, **$22,466.23** is payable to Plaintiffs' counsel (including **$1,199.35** in expense reimbursements and **$21,266.88** in attorneys' fees). The remaining **$42,533.77** is payable directly to Plaintiffs (the "Net Settlement Amount").

Keeping in line with the trend in this Circuit following *Cheeks*, the parties have agreed to a wage-and-hour release for any claims arising before Plaintiffs signed the Settlement Agreement. The parties also did not include a confidentiality provision and have specifically included language in the Settlement Agreement making it clear that nothing in the Settlement Agreement precludes the parties from truthfully communicating their experiences concerning the Action or Settlement.

The Settlement Agreement includes a mutual non-disparagement provision. The parties recognize that Courts have held that broad one-sided non-disparagement provisions "can be contrary to public policy because they prevent the spread of information about FLSA actions to other workers (both employees of Defendants and others), who can then use that information to vindicate their statutory rights." *Gaspar v. Pers. Touch Moving, Inc.*, No. 13 Civ. 8187 (AJN), 2015 U.S. Dist. LEXIS 162243, *3 (S.D.N.Y. Dec. 3, 2015). However, not every non-disparagement clause in a FLSA settlement is *per se* objectionable. *See Lopez v. Nights of Cabiria LLC*, 96 F. Supp. 3d 170, 180 n.65 (S.D.N.Y. 2015). Here, the non-disparagement clause contained in this agreement is permissible for two reasons:

1) First, the non-disparagement provision is mutual and binds both Parties. Following *Cheeks*, Courts have approved settlements containing mutual non-disparagement clauses. *See Sadana v. Park Li, Ltd.,* No. 15-CV-8772, 2015 U.S. Dist. LEXIS 19122, at *2-3 (S.D.N.Y. Feb. 17, 2016) (approving the inclusion of a mutual non-disparagement clause in a FLSA settlement agreement); *Caprile v. Harabel*, No. 14-CV-6386, 2015 U.S. Dist. LEXIS 127332 at *3 (S.D.N.Y. Sept. 17, 2015) (post *Cheeks*

    decision approving mutual non-disparagement clause but rejecting the inclusion of a confidentiality provision).

2) Moreover, in recognition of the public policy interest favoring the disclosure of information relating to this action, the non-disparagement clause contains a "carve-out" provision permitting the Parties to make truthful statements about their experience in this litigation. Courts have held that such a "carve-out" provision provides an equitable balance between Plaintiffs' rights under the FLSA, and Defendants' interest in preventing the dissemination of defamatory statements. *See Cionca v. Interactive Realty LLC*, No. 15-CV-05123 (BCM), 2016 U.S. Dist. LEXIS 77372 at *8 (S.D.N.Y. July 10, 2016) (a clause which bars a plaintiff from making negative statements about a defendant "must include a carve-out for truthful statements about [a plaintiff's] experience in litigating [her] case."); *Lopez v. Poko-St. Anns L.P.*, No. 15-CV-4980 (BCM), 2016 U.S. Dist. LEXIS 46862 at fn. 1 (S.D.N.Y. April 4, 2016) (approving bilateral non-disparagement clause containing a "carve-out" provision for truthful statements); *Panganiban v. Medex Diagnostic & Treatment Ctr. LLC,* No. 15-CV-2588 (AMD)(LB), 2016 U.S. DIST LEXIS 29158 at * 6 (E.D.N.Y. Mar. 7, 2016) (approving reciprocal non-disparagement clause with a "carve out" for truthful statements about [plaintiff's] experience litigating the FLSA action); *Cortes v. New Creators, Inc*., No. 15 Civ. 5680, 2016 U.S. Dist. LEXIS 79757, *4 (S.D.N.Y. June 20, 2016) (approving non-disparagement clause that "includes the requisite 'carve-out' for truthful statements about plaintiffs' experience litigating this case").

  As well, the mutual non-disparagement clause is bolstered by additional provisions that permit either party to commence an action in the event of a breach of the Settlement Agreement and to obtain reasonable attorneys' fees in the event that they prevail.

**IV.**  **Plaintiffs' Attorney's Fees and Expenses**

  As set forth in the Graham Affidavit, as of January 26, 2021, Plaintiffs' counsel has spent more than **131.78** hours in prosecuting and settling this matter, resulting in a lodestar of **$36,777.33**. (*See* Ex. C). Plaintiffs' counsel has spent **$1,199.35** in actual litigation costs from filing and serving the complaint and mailing the collective action notice materials. (*See* Ex. D). The portion of the settlement amount that Plaintiffs seek as attorneys' fees (i.e., **$21,266.88**) represents one-third (33.33%) of the settlement amount, after subtracting the actual litigation costs, which represents a negative multiplier of the lodestar and is consistent with what was agreed upon between the Plaintiffs and their counsel in their retainer agreement. Specifically, the retainer agreement between Plaintiffs and their counsel set forth a contingency fee of up to one-third (1/3) of any settlement, plus reimbursement of actual litigation costs.

  The hourly billing rates utilized by Plaintiffs' counsel in calculating the lodestar are within the range paid to attorneys of similar experience and professional focus in the Southern District of New York. In fact, similar rates have been approved in connection with a recent wage and hour default judgment in the Eastern District. *See Guinea v. Garrido Food Corp*., No. 19-CV-5860

(BMC), 2020 U.S. Dist. LEXIS 5476, at *4-5 (E.D.N.Y. Jan. 11, 2020) (Providing that rates of "$350-$450 per hour for partner time, $250-$300 per hour for associate time, and $125-$175 per hour for paralegal time…are reasonable and consistent with rates allowed in this district."). Although the applicable rates are those approved in the SDNY, the prevailing rates in the EDNY are similar, if not lower than those typically approved in the SDNY. *Allende v. Unitech Design, Inc.*, 783 F. Supp. 2d 509, 514 (S.D.N.Y. 2011) (Peck, M.J.) (approving partner's $450 hourly rate as "consistent with rates awarded by the courts in other FLSA or similar statutory fee cases," citing cases); *Torres v. Gristede's Operating Corp.*, No. 04-CV-3316, 2012 U.S. Dist. LEXIS 127890, 2012 WL 3878144 at *3-4 (S.D.N.Y. Aug. 6, 2012) (awarding hourly partner rates of $500 and $550 in FLSA case and noting that "'rates awarded to experienced civil rights attorneys over the past ten years have ranged from $250 to $600, . . . with average awards increasing over time.'") (internal citations omitted). Accordingly, Plaintiffs' counsel submits that the attorney's fees component of the settlement is fair and reasonable.

**V.     The Parties Believe that the Settlement Is Fair and Reasonable**

An FLSA settlement should receive judicial approval where it is "fair and reasonable." *See Cheeks*, *supra*; *Wolinsky v. Scholastic, Inc*. 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). Generally, there is a "strong presumption in favor of finding a settlement fair," as "the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Crabtree v. Volkert, Inc*., No. 11-cv-0529, 2013 U.S. Dist. LEXIS 20543, at *8 (S.D. Ala. Feb. 14, 2013). Moreover, "[c]ourts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes." *In re Penthouse Executive Club Compensation Litig*., No. 10-cv-1145, 2014 U.S. Dist. LEXIS 5864, at *22 (S.D.N.Y. Jan. 14, 2014) (noting that the inherent adversarial nature of a litigated FLSA case is adequate indicator of fairness of settlement). In considering whether a settlement is fair and reasonable, the principal question is "whether the agreement reflects a 'reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching.'" *Le v. SITA Info. Networking Computing USA, Inc.*, No. 07-cv-86, 2008 U.S. Dist. LEXIS 20786 at *2 (E.D.N.Y. Mar. 13, 2008) (*quoting Lynn's Food,* 679 F.2d at 1354). Although the FLSA places "limits on an employee's ability to waive claims . . . for fear that employers would [otherwise] coerce employees into settlement and waiver," *Wolinsky*, 900 F. Supp. 2d at 335 (alteration in original) (internal quotation marks omitted), "these concerns are not as relevant when the plaintiffs no longer work for the defendant, as is the case here." *Cisneros v. Schnipper Restaurant LLC*, No. 13-cv-6266, 2014 U.S. Dist. LEXIS 2111, *3 (S.D.N.Y. Jan. 8, 2014).

Here, the proposed settlement reflects a reasonable compromise of Plaintiffs' claims and disputed issues and did not result from any "overreaching" by the employer. To the contrary, the settlement was the result of arm's-length negotiations, consisting of numerous communications and exchanges between the Parties, including a mediation through the SDNY Mediation Program, during which the Parties discussed the merits of Plaintiffs' allegations and the defenses thereto, as well as the Defendants' ability to pay a substantial judgment if one were awarded. Additionally, the Plaintiffs are former employees of Defendants so the fear of possible coercion is not at issue here. The Parties are represented by counsel experienced in wage and hour law who duly counseled

Honorable Judith C. McCarthy
Plaintiffs' Letter Regarding Fairness of FLSA Settlement
Page **7** of **7**

their respective clients on the benefits and risks of continued litigation. The negotiated settlement is fair and reasonable when considered in the context of the litigation risks faced by Plaintiffs and the risk that recovery after trial would be less than the negotiated settlement amount. Settlement at this stage of the case unquestionably constitutes the most efficient and effective conclusion to this litigation. Defendants asserted legitimate substantive defenses which highlighted substantial risk to Plaintiff's ability to prevail on his FLSA claims in this litigation. *Lundy v. Catholic Health Sys. of Long Island, Inc.*, 711 F.3d 106, 115 (2d Cir. 2013) (FLSA protects only minimum wage and overtime). Arm's-length negotiations between knowledgeable counsel followed, culminating in a negotiated resolution.

*   *   *   *   *

As demonstrated above, the settlement is a result of substantial negotiations and compromise by all Parties. Therefore, the settlement is completely fair, reasonable, and adequate to the Plaintiff and we respectfully request that the Court approve the Settlement Agreement.

We appreciate Your Honor's attention to this matter.

Respectfully submitted,

*/s/ Taylor B. Graham*

Taylor B. Graham, Esq. of
PELTON GRAHAM LLC

Enclosure

cc:     All counsel (via CM/ECF)